## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROBERT ANDERSON and | ) |
| | ) |
| (2) SPENCER HECKATHORN, | ) |
| individually and on behalf | ) |
| of all others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No.: 24-cv-00174-MTS |
| v. | ) |
| | ) **<u>JURY TRIAL DEMANDED</u>** |
| (1) FARMERS INSURANCE EXCHANGE, | ) |
| | ) |
| Serve at: | ) |
| 6301 Owensmouth Avenue | ) |
| Woodland Hills, California 91367 | ) |
| | ) |
| (2) FARMERS INSURANCE COMPANY, | ) |
| INC., | ) |
| | ) |
| Serve at: | ) |
| 6301 Owensmouth Avenue | ) |
| Woodland Hills, California 91367 | ) |
| | ) |
| (3) FIRE INSURANCE EXCHANGE, | ) |
| | ) |
| Serve at: | ) |
| 6301 Owensmouth Avenue | ) |
| Woodland Hills, California 91367 | ) |
| | ) |
| Defendants. | ) |

## <u>CLASS ACTION COMPLAINT</u>

COME NOW Plaintiffs Robert Anderson and Spencer Heckathorn, individually, and on

behalf of all others similarly situated, by their undersigned counsel, and for their Complaint against

Defendants Farmers Insurance Exchange, Farmers Insurance Company, Inc., and Fire Insurance

Exchange,  state:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1.      Plaintiffs Robert Anderson and Spencer Heckathorn (collectively "Plaintiffs" or individually "Anderson" and "Heckathorn"), bring this case to protect their privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2.      Plaintiffs bring this suit to get telemarketers like Farmers Insurance Exchange, Farmers Insurance Company, Inc., and Fire Insurance Exchange, (collectively "Defendants" or "Farmers"), to stop incessantly calling their phones and the putative class members' phones despite the fact Plaintiff and the putative class members registered their phone numbers on the National Do-Not-Call Registry ("DNC List").

3.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.      The TCPA affords protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A);  47 U.S.C. § 227(b)(1)(3);  47 C.F.R. § 64.1200(a).

5.      Since 2003, persons who register their cell phone numbers on the DNC List are considered to be "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014,

14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6.       From January 2024 until March 2024, approximately 12.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Apr. 9, 2024).

7.       Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8.        In fact, in 2021 alone, there were over five million do-not-call complaints to the FTC about unwanted telemarketing calls.  Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022) *available at*: https://www.ftc.gov/news-events/news/press-releases/2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Aug. 1, 2023).

9.       The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

11.    This Court has personal jurisdiction over Defendants because Defendants transact business in Oklahoma, places telemarketing phone calls to persons in Oklahoma (like Plaintiffs) and sells various insurance-related products and services to persons in Oklahoma.

12.    Anderson is and at all times relevant was a resident of Mannford, Oklahoma, which is within this District.

13.    Heckathorn at all times material to this Complaint resided in Tulsa, Oklahoma, which is within this District.

14.    Plaintiffs are citizens of the State of Oklahoma and have been at all times material to this Complaint.

15.    Defendants placed telemarketing calls to Plaintiffs on their respective phones, which both have a "918" area code. The 918-area code is associated with the State of Oklahoma.

16.    Accordingly, Defendants purposefully and knowingly availed themselves to the State of Oklahoma by making (or causing to be made), the offending telemarketing calls underlying this action.

17.    Plaintiffs experienced the annoyance, frustration, and disruption from Farmers' telemarketing calls while present in this District.

18.    Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

**PARTIES**

19.     At all times relevant to this Complaint, Anderson was, and is still, the owner of a cell phone. His cell phone number is 918-XXX-7262.

20.     Anderson registered his phone number on the DNC List on or about September 26, 2003, to avoid receiving unwanted telemarketing calls.

21.     Anderson's cell phone number is a personal phone number and is not a business line.

22.     The monthly bill associated with Anderson's phone number is issued in Anderson's name, and not in the name of a business.

23.     Anderson uses his cell phone primarily for residential purposes, such as communicating with friends and family members.

24.     At all times relevant to this Complaint, Heckathorn is, and was, the owner of a cell phone. His cell phone number is 918-XXX-2676.

25.     Heckathorn registered his phone number on the DNC List on or about July 26, 2006, to avoid receiving  unwanted telemarketing calls.

26.     Heckathorn's cell phone number is a personal phone number and is not a business line.

27.     The monthly bill associated with Heckathorn's phone number is issued in Heckathorn's name, and not in the name of a business.

28.     Heckathorn uses his cell phone primarily for residential purposes, such as communicating with friends and family members.

29.     Defendants Farmers Insurance Exchange and Fire Insurance Exchange are separate inter-insurance exchanges existing under the laws of California, with their principal places of

business in California.

30.     Defendants Farmers Insurance and Fire Insurance Exchange are authorized to conduct business in Oklahoma, and which markets and sells various insurance products in Oklahoma.

31.     Defendant Farmers Insurance Company, Inc. is an insurance company authorized to conduct business in Oklahoma, and which markets and sells various insurance products in Oklahoma.

32.     Defendants Farmers Insurance Exchange, Fire Insurance Exchange and Farmers Insurance Company, Inc. (collectively "Farmers") are part of the Farmers Insurance Group, an insurance organization consisting of more than twenty insurance entities, with its principal place of business in California.

33.     Farmers' primary business is selling insurance products and services, including, but not limited to, automobile and homeowners' insurance.

34.     Farmers markets its insurance products through a variety of marketing tactics including placing telemarketing calls and text messages.

35.     Plaintiffs did not provide consent to Farmers to contact them.

**FARMERS' AGENTS AND FARMERS' CONTROL OF ITS AGENTS' MARKETING**

36.     Farmers has agents throughout the United States, including Oklahoma, who market and sell its insurance products.

37.     On information and belief, at all times material to this Complaint, Farmers' insurance agents are captive agents, meaning they are only permitted to sell Farmers' insurance products and cannot sell insurance products that compete with Farmers' insurance products.

38.     On information and belief, Farmers retains the unilateral and absolute right to control the use of its agents' marketing, including, but not limited to, requiring approval before using the Farmers® name or logo.

39.     On information and belief, any advertising or marketing method to be used by a Farmer's agent is subject to the approval of Farmers.

40.     On information and belief, Farmers approval of marketing, including the use of its name and logo, extends to telemarketing.

41.     On information and belief, Farmers approved of the text messages and calls placed to Plaintiffs and the putative class members as described in this Complaint.

42.     On information and belief, Farmers controls the geographic scope in which its agents may sell Farmers' products, and for which they may receive commissions.

43.     On information and belief, Farmers retains the right to instruct its agents to not submit applications for insurance that were obtained from persons whose phone numbers were on the DNC List at the time they were called or texted by Farmers' agents. Furthermore, Farmers has the right to refuse to sell its insurance products to such persons.

44.     On information and belief, after its agents contacted persons on the DNC list as described in this Complaint, Farmers sold insurance products to a number of those persons and received premiums from those sales.

45.     On information and belief, Farmers at times pays for the marketing efforts of its captive agents.

46.     Farmers underwrites the insurance policies marketed by its agents and guarantees the policies.

47.     When an agent sells a Farmers insurance policy to a consumer, the premium is paid directly to Farmers. The agent that sold the policy will then receive a commission, which is paid by Farmers to the agent.

### FARMERS' TELEMARKETING CALLS TO ANDERSON

48.     Despite not applying for insurance from Farmers or anyone else, in October 2021, Anderson began receiving incessant telemarketing calls from Farmers.

49.     On October 19, 2021, at approximately 5:06 p.m., Anderson received a phone call on his cell phone.  The phone number that appeared on his cell phone was 708-665-6520.

50.     Anderson received an additional six phone calls from his cell phone from this same phone number on October 19, 2021.

51.     Not knowing who was calling, Anderson did not answer the call.  The caller left multiple voicemails on Anderson's phone but did not identify who was calling.

52.     The calls began again the next day from the same number. On October 20, 2021, at approximately 11:49 a.m., Anderson received a call on his cell phone from the same number.

53.     Then, calls began to come to Anderson's cell phone from similar numbers.

54.     On October 20, 2021, at approximately 2:43 p.m., Anderson received a call from a phone number that appeared on his caller ID as 708-665-4919.

55.     On October 21, 2021, beginning at approximately 11:46 a.m., Anderson began receiving calls from a phone number that appeared on his phone as 708-665-6655.  Anderson received a total of three calls from this number on his cell phone on October 21, 2021, through 2:58 p.m.

56.     Then, Anderson began receiving calls from a similar number later on October 21, 2021. At 2:58 p.m., 3:35 p.m. and 4:20 p.m., Anderson received calls from a phone number that appeared on his caller ID as phone number 708-640-0939.

57.     Anderson continued to receive additional calls from similar numbers on October 22, 2021. He received a call appearing as being from phone number 708-665-6421 at 11:15 a.m., a phone call appearing as being from phone number 708-640-4818 at 12:10 p.m., 12:11 p.m. and 12:35 p.m.

58.     As Anderson did not know who was calling and the caller was not identifying themselves in voicemails, Anderson did not answer these calls.

59.     However, Anderson was annoyed, frustrated and perturbed by the incessant phone calls he was receiving and then received a phone call on October 22, 2021, at approximately 1:47 p.m., that appeared as being from a similar number, 708-640-4850.

60.     To determine who was calling so that he could get the incessant calls to stop, Anderson answered the call and spoke to the representative.

61.     The representative on the phone advised that they were calling from Farmers Insurance and that they were interested in providing insurance to Anderson.

62.     Not certain if the caller was actually calling from Farmers, Anderson answered various questions from the representative for the purpose of seeing if they would e-mail him information so he could definitively confirm that Farmers were the ones incessantly calling his cell phone.

63.     After the call, at approximately 2:12 p.m., Anderson received an e-mail from a Farmers representative named Seth Dierker. Mr. Dierker's e-mail was seth.nward@farmersagency.com.

64.     Mr. Dierker's e-mail address included the Farmers logo and also included a link to the website www.farmersagent.com/nward. This link takes a person to a Farmers webpage with the Farmers logo of a "Farmers Insurance Agent" named "Nickolas Ward."

65.     The Farmers webpage for Mr. Ward states that Mr. Ward is "your local Farmers® agent in Coweta, OK . . . ."

66.     The Farmers webpage for Mr. Ward identifies various types of insurance offered for sale, including automobile insurance.

67.     The e-mail from Mr. Dierker included a "preliminary estimate" for automobile insurance policy with the Farmers logo and stated that the quote was prepared by Nickolas Ward, who is located at 11319 S State Highway 51, Suite 500, in Coweta, Oklahoma, and whose e-mail address was nward@farmersagent.com.

68.     On information and belief, the "preliminary estimate" was prepared at Farmers corporate office in California as the estimate states the estimate was prepared at 12:10 p.m., which was approximately two hours before the time the estimate was sent to Mr. Anderson.   On information and belief, this two-hour difference reflects that the estimate was prepared using Pacific, rather than Central, time.

**FARMERS' TELEMARKETING COMMUNICATIONS TO HECKATHORN**

69.     Like Anderson, despite not applying for insurance from Farmers or anyone else, in April and May of 2021, Heckathorn began receiving incessant telemarketing calls and text messages from Farmers.

70.     Despite the fact Heckathorn did not having submit any request for an insurance quote, on April 8, 2021, at approximately 10:21 a.m., Heckathorn received a text message that stated, "Hi Spencer, This is Nate and my Insurance agency received your request for an Insurance

quote, we are currently working on that now for you. Would you prefer the quote texted or emailed to you?"

71.     The text message appeared as have been sent from phone number 405-655-5166.

72.     On April 8, 2021, at 4:06 p.m., Heckathorn received another text message from the same number. The message stated, "Thank you for the opportunity to earn your business. Please take a moment to review the quote comparison I've prepared for you. If you have any questions, please don't hesitate to ask. Your quote is ready at: https://app.agencymvp.com/compare/z_zzXScdv8kPFsMXyGLs. You can always reach me at 405-757-2767.

73.     On April 9, 2021, Heckathorn received another text message from the same number, stating, "Hi Spencer, I worked on your insurance quote from yesterday. When might be a good time to go connect and go over the coverages with you?"

74.     The phone number 405-757-2767 is the phone number for a Farmers insurance agent named Nate Esparza.

75.     On May 19, 2021, through May 27, 2021, Heckathorn was harassed by another Farmers insurance agent, who sent him the following text messages:



76.     On information and belief, "Shay at Farmers" is Shayna Wood, a Farmers insurance agent.

77.     Ms. Wood's photograph and contact information is located on the Farmers website at https://agents.farmers.com/ok/bethany/shayna-wood/.

78.     Ms. Wood's profile on the Farmers website includes the Farmers logo and states that Ms. Wood is a "Farmers Insurance Agent" located in Bethany, Oklahoma.

79.     The Farmers website states that Ms. Wood is "your local Farmers® agent in Bethany, Oklahoma" and identifies a variety of insurance products sold by Farmers.

80.     On information and belief, at all times material to this Complaint, Ms. Wood's e-mail address was SWood@farmersagent.com.

81.     Despite Heckathorn responding to the text message that he was not looking for insurance, on June 2, 2021, Heckathorn received a voicemail that appeared on Mr. Heckathorn's phone, as originating from phone number 405-848-6832.

82.     The voicemail stated, "Hey Spencer, it's Shay at Farmers. Give me a call when you have a chance. Thanks, bye."

83.     The phone number 405-848-6832 is associated with a Farmers insurance agent named Mary Huffman.

84.     On information and belief, the calls Shay Wood placed were placed on behalf of Mary Huffman.

85.     Ms. Huffman's photograph and contact information is located on the Farmers website at https://agents.farmers.com/ok/oklahoma-city/92841200-mary-huffman/home-insurance/.

86.     The phone number 405-848-6832 is located below Ms. Huffman's photograph and the Farmers logo on the Farmers website.

87.     Ms. Huffman's profile on the Farmers website includes the Farmers logo and states that Ms. Huffman is a "Farmers Home Insurance Agent" located in Oklahoma City, Oklahoma.

88.     The Farmers website states that Ms. Huffman is "your local Farmers® agent."

89.     Again, despite never not having requested an insurance quote from Farmers, another Farmers insurance representative contacted Heckathorn on March 2, 2022, by sending Heckathorn two text messages. These text messages appeared on Heckathorn's phone as having originated from phone number 918-205-4647.

90.     The first text message sent to Heckathorn appears to be a picture of a business card containing the Farmers logo. The business card is that of a person named Jason Hall located in

Tulsa, Oklahoma, with a phone number of 918-388-3933 and an e-mail address of jhill4@farmersagent.com.

91.     The second text message stated, "Hi Spencer! This is Jason with Farmers Insurance. We received your request for an insurance quote on your vehicles and would be happy to help you with that! Do you prefer a phone call or texting?"

92.     Mr. Hall's LinkedIn profile states that between January and August 2022 he was an "Insurance Agent" for "Farmers Insurance."

93.     Farmers' harassment continued into the next year.

94.     On March 2, 2023, Heckathorn received a call on his from Farmers, and appeared on his phone as having originated from phone number 405-275-6325.

95.     Phone number 405-275-6325 is the phone number of a Farmers insurance agent named Brian Shirey.

96.     On information and belief, Mr. Shirey's photograph and contact information was formerly located on the Farmers website.

97.     On information and belief, the phone number 405-848-6832 was formerly located below the Farmers logo on the Farmers website.

98.     Although Heckathorn did not own a home and did not request any quote or information from Farmers, on May 11, 2023, he received a text message from another Farmers insurance agent. The text message stated, "Hi Spencer, this is Brayden with Farmers Insurance, LeNard Rhone agency. I received a quote started for you. It is coming in at a great rate! Would you like me to send it by text or email? Text STOP to stop texts from this agency, or STOPALL to stop all texts & calls from Farmers." The phone number that appeared on Heckathorn's phone that was associated with the text message was 918-992-7046.

99.     At the time he received this text message, Heckathorn also received a phone call on his cell phone from "Brayden." Brayden identified himself as a representative of Farmers. Heckathorn told Brayden he wanted no further communication from Farmers.

100.    On information and belief, the call and texts were placed by "Brayden" on behalf of Le Nard Rhone.

101.    Mr. Rhone's photograph and contact information in McAlester, Oklahoma is located on the Farmers website at https://agents.farmers.com/ok/mcalester/le-nard-rhone/.

102.    Ms. Rhone's profile on the Farmers website includes the Farmers logo and states that Mr. Rhone is "proud to serve McAlester as your local Farmers® agent."

103.    The Farmers webpage for Mr. Rhone identifies various types of insurance offered for sale, including automobile insurance.

**DIRECT AND VICARIOUS LIABILITY**

104.    Without the benefit of discovery, and because Farmers disclosed its identity in the telemarketing calls and text messages at issue, Plaintiffs assume Farmers' agents directly placed the calls and texts at issue.

105.    However, if some or all of the calls were made by third-party/parties on behalf of Farmers, in the alternative, Farmers is vicariously liable for those calls.

106.    On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party

> telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

107.   Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

108.   The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

109.   If Farmers directly placed the calls or texts at issue to Anderson or Heckathorn, Farmers is directly liable for those calls and texts.

110.   However, Farmers may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiffs and only known to Farmers.

111.   In the event Farmers did not directly place the calls or text messages to Farmers, Farmers' third-party telemarketers had actual and/or apparent authority to act on behalf of Farmers.

112.   Likewise, Farmers also ratified its agents' violations of the TCPA by accepting insurance premiums from sales imitated by unlawful telemarketing communications.

113. Farmers controlled or had the right to control the marketing activities of those acting on its behalf.

114. Farmers acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

115. Farmers is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

116. For the counts identified below, if Farmers directly placed the calls or texts at issue, it is directly liable. In the alternative, to the extent any calls or texts were made by a third-party agent(s) acting on Farmers' behalf, Farmers is vicariously liable for those unlawful calls and text messages.

**Class Allegations**

117. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the requirements of Rule 23.

118. Plaintiffs seek to represent the following class:

For the four-year period prior to the filing of this lawsuit to the date of class certification, all persons:

(1) who received two or more calls or text messages during a 12 month period in connection with the marketing of Farmers' products or services;
(2) whose number was registered on the Do Not Call Registry for more than 30 days at the time the calls were received; and,
(3) whose number is registered to an individual and not a business.

This class is limited to calls or texts placed by or on behalf of the following Oklahoma insurance agents and their agencies: Nickolas Ward, Nate Esparza, Shayna Wood, Mary Huffman, Jason Hall, Brian Shirey and Le Nard Rhome.

119. Plaintiffs reserve the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

120.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people have been harmed by Farmers' actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Farmers or those acting on its behalf.

121.     Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

122.     On information and belief, Farmers has called and texted, and continues to call and text people whose numbers are registered on the DNC List. It is reasonable to expect that Farmers will continue to place such calls and text messages, absent this lawsuit.

123.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.      Whether Farmers' conduct of placing calls and text messages to persons whose phone numbers are registered on the DNC List violates 47 U.S.C. § 227(c);

b.      Whether the calls and text messages were "solicitations" as defined by the TCPA;

c.      whether Farmers maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls or messages to numbers on the DNC;

d.      Whether Farmers' conduct violates the rules and regulations implementing the TCPA; and,

e.      Whether Plaintiffs and the putative class members are entitled to increased damages for each violation based on the willfulness of Farmers' conduct.

124.    Plaintiffs' claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

125.     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

126.    Plaintiffs' counsel will vigorously litigate this case as a class action, and Plaintiffs and their counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

127.    A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

128.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

129.     Questions of law and fact, particularly the propriety of placing calls and text messages to phone numbers on the DNC List, predominate over questions affecting only individual members.

130.     Farmers has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (National DNC List Violations)

131.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as if fully stated in this Count.

132.     The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

133.     The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

134.     In addition, the TCPA allows the Court to enjoin Farmers' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

135.     By placing calls and texts to Plaintiffs and the putative class members' phone numbers, which were registered on the DNC List, Farmers violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

136.    Farmers or those acting on its behalf knew or should have known that Plaintiffs'
and the putative class members' phone numbers were registered on the DNC List.

137.    Farmers or those acting on its behalf willfully violated the TCPA when placing the
calls and text messages to Plaintiffs' and the putative class members' cell phones.

138.    Plaintiffs and the putative class members are entitled to damages of up to $500.00
per violation for each call made by Farmers or those acting on its behalf that the Court finds
violates the TCPA and up to $1,500.00 per violation if the Court finds that Farmers or those acting
on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Robert Anderson and Spencer Heckathorn, individually, and on
behalf of all others similarly situated, request that the Court:

a.      Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3),
certifying the proposed class, appointing Plaintiffs as the class representatives, and appointing
Plaintiffs 'counsel as class counsel;

b.      Enter judgment in favor of Plaintiffs and the DNC List Class members for all
damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief,
statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully
violated the TCPA;

c.      Enter a judgment in favor of Plaintiffs and the Class that enjoins Defendant from
violating the TCPA's provisions and regulations;

d.      Enter judgment in favor of Plaintiffs and the Class for all applicable pre-judgment
and post-judgment interest amounts;

e.      Enter judgment in favor of Plaintiffs and the Class for all costs; and,

f.      Award Plaintiffs and the Class members such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs demand a jury trial.

Dated:  April 19, 2024

*/s/ Charles L. Richardson*
Charles Richardson, Esq.
Colton Richardson, Esq.
Richardson Richardson Boudreaux
7447 South Lewis Avenue
Tulsa, Oklahoma 74136
918-508-2367
chuck@rrbok.com
colton@rrbok.com

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (phv forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
CRoberts@butschroberts.com
*To Be Admitted Pro Hac Vice*

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg (phv forthcoming)
30 East Butler Avenue
Ambler, PA 19002
Telephone: (267) 468-5374
Fax: (877) 788-2864
jginsburg@creditlaw.com
*To Be Admitted Pro Hac Vice*

*Attorneys for Plaintiff*